We will hear argument next in number 151608, Computer Software Protection v. Adobe Systems. Mr. Countryman, whenever you're ready. Thank you, Your Honor. May it please the Court. The District Court made three errors with warrants setting aside its denial of attorney fees. First, it misjudged the strength of Adobe's licensed defense. Second, it failed to fully analyze the defense or explain why it thought this case did not stand out from others. And third, the District Court seemed to adopt a per se rule against fees where the plaintiff drops the suit before an adjudication on the merits. Can I ask you this? I'm going to put aside the idea of a per se rule, which I will tell you I just don't find in the District Court's opinion. Suppose for a minute that I thought when I read the crucial provision of the Oracle license, which I guess we can actually talk about here, which is the one about function structure or operation or some phrase like that, that there was actually some room for uncertainty about whether that language covered an accused infringer who was using an Oracle database, but could just as easily have used any other off-the-shelf database. There's nothing about the asserted inventive features of the claim involved stuff going on that is the way that the Oracle database was structured. It was put stuff in, get stuff out when you ask for it. And that that would be a reasonable or at least a non-frivolous or a non-exceptional argument to make against the asserted defense. At that point, and suppose we could determine that. Again, this is all building in assumptions. At what point do we say that the District Court had to do the work to explain that to us? Because you know, Judge Robinson referred to the obvious policy. She now is going to be asked to spend her time on a case that she didn't learn very much about because it resolved itself early when there's other work to be done. That's a real cost to the judicial system. So how do we think about that? Right. So if this court thought that CSP's position was reasonable on the structure of function and operation. Or at least non-exception. Or at least non-exception. Whatever the difference would be. I think this court could make that determination in the first instance and not have to send it back to Judge Robinson to have her do the work. But in this case, we think that CSP's position doesn't have any merit. Because for two reasons. First, the claims themselves require this step of generating the license key number using the license registration database. And so the claim itself necessarily implicates the structure, function, and operation of the database. Because it requires using the database to generate the license key number. I will admit to not having found the words to capture a kind of intuition of a possible reading of that limitation. But one analogy I guess that has come to my mind, it probably has come to your mind too, is the 101 Alice analogy. When a computer is called for in the claim in a way that is off the shelf standard functions of computers. Whether calculations or put stuff in memory, get stuff out of memory. Under 101, in some sense, in some circumstances, that just doesn't count to change what would otherwise be an ineligible subject matter into one that is eligible. Why is it unreasonable, again to use that word, to think that the Oracle license was drawing a line something like that? If you're using inventive aspects of our database, you're licensed. But if you're just using our database the way you could use a Microsoft database or any other, that's not what we're granting you a license to do. I think the license of the Oracle language shows you that it's not to be interpreted that way because it draws a line between situations in which you're just merely interacting with an Oracle product and situations where you're accusing the structure, function, or operation. And it doesn't say a function that's unique to the Oracle product that no other products could do. It simply says anything about the structure, function, and operation. In this case, CSP, in addition to the claim language, specifically points out in its claim charts that the Oracle database is storing a hash of the information about the user's machine that's trying to unlock Adobe software. And so by specifically pointing to the fact that the database is storing that information, CSP's infringement allegation necessarily implicates the function and operation of Oracle's product. And there's just nothing in the language of the license that would make it a colorable argument to distinguish between some functions which are more elementary and might not count in an Alice analysis and other functions that are more specific to Oracle software. So as Your Honor noted, this court could certainly decide on its own that CSP's position was reasonable without need for a remand. I think the flip side of that is that this court decides that CSP's position is unreasonable, that it should say that in its opinion, and then it should remand the case to the district court with instructions to decide the fee motion in light of the fact that CSP's position is objectively baseless. So we would be actually reaching the merits in an attorney's fees case. So you wouldn't reach the ultimate merits of whether fees were warranted, but what we would suggest that you could do is to say that it would be legal error, it would be an abuse of discretion to find that CSP's claim was anything but baseless, and to remand for the district court to exercise its discretion, whether given the fact the plaintiff's taking a baseless position, whether fees would be warranted. What you'd be looking for then is for the district court to go through and analyze the various arguments with respect to the applicable provisions of the license agreement, 1.8, 1.9, 2.5, and so forth. So there's two ways. I mean, we would suggest that this court could do that in the first instance, but at a minimum, it should be remanded for the district court to do that, because the district court's opinion as it is doesn't go through any of that analysis. It just kind of says in a sentence that it thinks the arguments aren't exceptionally positive, but it doesn't explain anything about why it thinks CSP's position has any merit. And we've shown in our briefs here that CSP's position doesn't have any merit. And we've talked about the structure, function, and operation point already. CSP's only two other points were, one, that it says the license isn't enforceable by Adobe or other third parties, but that's wrong for two reasons. It's wrong as a matter of California law, which governs this license, and the Rodriguez case we cite in our brief expressly says there's no question that a third party can enforce this type of provision. That's also wrong because the Oracle license itself expressly says— I'm sorry to interrupt you, but are you saying we should say something about the contract and send it back, or that we should say nothing about the contract and send it back? I'm sorry, about the license agreement. So I'm saying both and the alternative. I think our preference would be for this court to say something about the contract and send it back, because we feel there's really three issues about the contract here. We think CSP's position with respect to all of them is baseless. And if this court were to just send it back without any instruction and the district court were to render a decision denying fees, it might lead to a second appeal. And so given that the case is here now and that it's a pure legal issue, we think it makes sense for the panel right now to say something about the interpretation of those contractual provisions. So I guess you're saying you're looking for a statement of law from this court that it's an abuse of discretion for a district court to deny attorneys' fees motions if it doesn't expressly weigh the merits or relative strength of the losing party's merits position? Yes. We think the district court has to say at least something. Well, this judge did say something. Well, the district court said just in a sentence it thought that the merits weren't exceptional. But there was no additional sentence explaining. So we think what there would have to be is at least another sentence or two explaining and saying in particular we think the license – or I think the license issue is close because of CSP's argument that X. But we've never required that before in a denial of attorneys' fees. For district courts to, I guess, show all their work on why they denied it. I think it's still a relatively new area of the law given the intervening decisions in Octane and Highmark. And what we would say is given that there is abuse of discretion review here, the quid pro quo for that is that the district court has to give some explanation for why it's exercising its discretion in the way that it is. So if there's going to be deference, the district court at least has to say a sentence or two about which of the particular arguments it's basing its decision on. Because, for example, here if the district court had based its decision on thinking that it was close, whether a third party could enforce this license or not, we think that would be an abuse of discretion. Because both California law and the license itself are very clear that this can be enforced by a third party. Can I go back to what I think was my first question and your answer to it? I thought you had said that if we concluded that on the merits, their license position, let's say on structure function operation, was a reasonable position, that at that point we don't need to require the district court to say more and we could just affirm? I think that's correct, Your Honor, because I just think logically what we're asking you to do on the flip side is to, in the first instance, give some guidance about CSP's claims being baseless. And so I think, yes, it has to go both ways. Here, of course, we don't think their positions are reasonable. We also think to the extent there's any doubt about it, that a remand is appropriate because the district court could address those issues in the first instance and should do so in some kind of reasoned way. I would say, in addition to the failure to explain, another potential problem with the district court's opinion is that it didn't fully analyze the license issue. So the district court's opinion includes the footnote that says it would be a waste of judicial resources to address it here where the lawsuit had been voluntarily dismissed. We don't think that's correct. As a general matter, it actually saves judicial resources for district courts to actually… learning precisely because the judge hasn't been involved is obviously costly in the particular case. And to have a general rule would be systemically costly, but you also have a point about the systemic disincentivizing of bad lawsuits. You are into your rebuttal. I don't know if you want to save the time. Yes, I'd like to save it. Thank you. Thank you, Judge. Mr. Greensfield. Good morning, Your Honors, and may it please the Court. Judge Chin, in fact, the Federal Circuit, this Court, has already reached and decided the question of how much detail must go in a fee denial order, and that was from the Wedgetail decision. Right, that was… That's right, Your Honor. …several years ago. 576F1302. We heard an intervening change in the sort of substantive standard, and we heard that we get even more discretion in the trial court for the ultimate outcomes, but we haven't had any change in the Federal Circuit's statement of, if you will, procedural law. And I'll just read from the decision. The Court has not imposed a blanket requirement that a district court provide its reasoning in attorney's fee cases. And then there's a later sentence in the same opinion. And incidentally, Your Honor, Judge Shaw, you were one of the panel members for Wedgetail. Yeah, we know Wedgetail. I guess… Yeah. …but can you respond to the other side, who suggests that there should be some kind of quid pro quo now that there's a much more relaxed standard review and the district courts are empowered with much more discretion? Because of all that, you know, comes great responsibility. And so therefore, they ought to be really showing their work and their reasoning in why they are denying fees. I wish I could answer with another quote from Uncle Ben and Stan Lee, but I will simply say that under Wedgetail, there already was an abuse of discretion standard that was already in existence for the overall determination of the award of attorney's fees. So in that sense, it's a continuum. Nothing has changed in that. There are some tweaks, and that's it. Later in the Wedgetail decision, it's the grant of a fee motion that calls for some extra reasoning. And let me not discount what Judge Robinson said and what she did. Recall, of course, she's been on the bench for a quarter century. She's seen a lot of patent cases. She's seen the good, the bad, and the ugly. And what she did is she actually spent five pages explaining her point of view. After explaining within the five pages, she explained the rule of law she was applying. And we know from the Cooter decision that when the judge states the rule of law correctly and gives substantial justification for the ultimate conclusion, then there's affirmance. There's no abuse of discretion. Can you just remind me, is part of the discussion in the district court's opinion a discussion of the license defense? As opposed to just sort of referring to there was a license defense, and then your client dropped the case or something. It's not explicit. And if I can paraphrase what Judge Robinson said, she said, I read the record. I read all the briefs. I know when I see it, and I don't see it here. She didn't actually walk through 1.8, 1.9, 2.5. I agree with that. That's absolutely correct. But, of course, that was all before her. And when there's any ground that appears in the record that would support the ultimate determination on attorney's fees, there should be affirmance. That's also in the Wedgetail case, and that's also in many other cases. There's a long tradition of that in federal circuit jurisprudence reviewing trial courts. And, of course, I'd like to go to the actual merits of license defense. What we didn't hear from Mr. Countryman in discussing the merits is that one of our primary arguments in the district court, it was the very first argument that we responded to them when they first raised this defense in the middle of the case. The very first response was, wait a second, this is a method claim. See cardiac pacemakers. And if your honors recall, cardiac pacemakers was an en banc decision of this court. And it was an en banc decision on method claims particularly. And the ultimate holding was that a limitation to a physical structure within a patent claim does not make the structure a component, a quote unquote component of a method claim. So what that means is we have a head start in rebutting and responding and shooting down the license defense because this court has already said that the physical structure named in a method claim step is not a so-called component of a method claim. Now let's come back to the issue of first impression that would otherwise have been in front of the district court, which is the interpretation and application of this license agreement. The exact words that we did not hear again in Mr. Countryman's argument, which were in section 2.5, are the words based on. What we heard him say is, quote, I think I'm quoting correctly, when you're accusing the structure and function and operation, et cetera, et cetera. In fact, the language of the agreement is very precise. It says to the effect of when your allegations are based on. Which provision are you reading from? Still in section 2.5. In section 2.5, if you drill down to I think it's part B or two near the very end, there's the statement. For purposes of clarity sentence. That's right. Let's call that the proviso. So the proviso says a third party cannot avail itself of this provision. I could open the page, but the third party cannot avail itself of this provision if there's mere interaction. And the allegation of infringement is not based on the structure, function, or operation of the Oracle product. So this was a difficult exegesis exercise, certainly. We think we had the better of the merits. We've never accused Adobe of raising a frivolous license defense. We simply had a belief and that belief is recorded in the record that we would win the license defense when and if it were ultimately tested. So of course there was a dismissal. The dismissal was for economic reasons and not for fear of the merits. So where does that leave us? Adobe writes the software that goes into the so-called generating the license key claim element. Adobe writes the software. That's in the record at A538. So because of that fact, the application of the agreement to the facts would not have resulted in Adobe's victory on the license defense. Of course there are other issues raised in the briefing. I'm available to answer any questions on those. Can I go back to a legal discussion that you were having particularly with Judge Chen about Wedgetail? Don't we have some cases that do say, well, there's no blanket requirement that a district court in denying fees explain why. Sometimes we have said there is enough here that we will remand for an explanation where there's just no explanation dealing with something that seems to us pretty serious. A pretty serious basis for a claim for fees. Obviously almost everything is pre-IMARC, pre-octane. But nevertheless, don't we have such cases? I'm not familiar with that. I don't recall any case of that nature being cited. I think gratuitously we have had observations that in denying fees there had been a statement of reasons. But I don't think that there is any watering down of the Wedgetail statement that we don't have to have. But even the statement by Wedgetail is about no blanket requirement. That doesn't mean we will never do this. We can't ever do this. Sometimes an explanation is necessary for us to figure out because we do not see a reason on which fees could have been denied. So you have to tell us if there is. I agree with Your Honor. You actually pin it right in the bullseye. It's when the record doesn't reveal a rational basis for not awarding fees that there should be a remand for explanation. Why should the standard be that demanding, I guess? On a discretion standard, a district court can say, well, I don't think that this is enough of a reason. Some other district judge might think it's enough of a reason. If we applied a standard that said we see a reason that a district court could have relied on to deny fees, aren't we essentially exercising a discretion that doesn't belong to us? No, Your Honor. You're testing the boundaries of discretion that was available to the district court. It still preserves the hypothetical scenario Your Honor mentioned where maybe there is one district judge who would award fees under these facts, but another district judge would deny fees on these facts. If there's a sound basis, if you can connect the dots and lead to either this result or that result, then that means that this court is fully capable of affirming without requiring a remand. Before I walk off, I don't want to forget one point, which is the voluntary... What do you make of the policy point that the district court made here, which obviously has some real force, but there's another side to it. The side about the potentially systemically costly operation of bringing lawsuits that get settled before the district judge has had to get involved, and therefore any fee request would impose on the district judge work that would be substantially greater than if the district judge already knew, had some real familiarity with the case. If I understand the question, if I can rephrase it Your Honor, what do I make of the policy of not forcing a district court to gain intimate familiarity with the merits when the case has already been dismissed just to assess a fee motion? What I think Judge Robinson said about a waste of judicial resources by having to scrutinize, to learn more about the case than the work on the merits of the case, the pre-dismissal stage of the case had required the judge to do. It's clearly a cost. We've sometimes used the phrase, or at least some courts have used the phrase, of having a burdensome mini-trial on the fee request, but there's a set of cases in which precisely because the district court has not had to become familiar with the case, it goes away before that happens. Those costs are greater. On the other hand, that seems like a window for exploitation. Well, there's nothing new under the sun about one policy having competing outcomes from another policy, and I think we acknowledge that in our briefing. There's the deterrence policy, which is in tension with the policy in favor of resolution of disputes in the shadow or in the wake of a voluntary dismissal, and so district courts are in the best position, and the Supreme Court has said district courts are in the best position to weigh those competing policy concerns. In fact, in Octane and then repeated in Conville, a case cited by Adobe, there is a statement that once a court determines that a case is exceptional, then discretion triggers to decide whether to award fees. So even the Supreme Court doesn't believe that the policy in favor of deterrence should overshadow and eclipse all other policies, and here there was a voluntary dismissal. So my final observation would be we haven't found and we haven't seen from Adobe any case in which this court, in a presidential opinion, affirmed the grant of attorney's fees after a voluntary dismissal, before any merits rulings, and in the absence of litigation misconduct. And then even more strongly for our case, there's not a single case on the record that we could find or that's been shown to us where this court has reversed a district court's denial of fees in the wake of a voluntary dismissal period. Thank you, Your Honor. Mr. Countryman, you have almost two and a half minutes. Thank you, Your Honor. Just a couple points. First, with respect to the notion that the district court has to explain reasons for its decision, in the Gray Brief, pages 18 and 19, we cite some cases on that. For example, the Supreme Court's decision in the Hensley case stresses that in the context of fee decisions under 42 U.S.C. 1988, that a district court must, quote, provide a concise but clear explanation of its reasons. And in addition... Can you remind me, that was not about whether somebody was prevailing or whether to award fees, but Hensley was about the calculation, right? I believe that's correct, Your Honor. And in addition, there's a case from this court, the SFA case under 285, which I think affirmed a denial of fees in that case, but noted that, quote, if there's something, quote, in the district court's ruling to indicate the court gave the appellant's argument scant attention, unquote, that that might be a basis for vacater. And that's what we think we see here. With respect to Mr. Greenspoon's point about the based-on language in the Section 2.5 of the license, a couple things. First of all, there could be no infringement of these claims without the accusation against the Oracle database. The claims explicitly require using a database, the only database that CSP ever pointed to as an Oracle database. Its claim charts explicitly point to the fact that the Oracle database stores information. So certainly CSP's infringement allegations were based on that Oracle database, because it was explicitly in its infringement charts. In addition, with respect to the cardiac pacemakers case, we cite the cases at pages 8 and 9 of our gray brief that say that for a method claim, if there are structures recited in the claim, to show infringement of the claim, you have to show use of those structures. And that's precisely what they had to do here. And so their infringement allegation was based on an accusation against those structures. Third, with respect to the dismissal being for economic reasons, I just note that the Crawford economic reason was a license that was given over five months before they dropped the suit against us. In those intervening five months, we had to take expert depositions, brief time construction, brief summary judgment, so the timing doesn't line up for them on the economics. And finally, if I could just make a closing point, this is an important case. The Supreme Court has said in Highmark that there still is appellate review of fee denials. It might be for abuse of discretion, but there still is appellate review. Here you have a plaintiff who has truly pressed a frivolous claim, and if a plaintiff can just drop a claim and have a safe harbor, it's going to encourage bad behavior, because we have this situation where the plaintiff can go after multiple other small companies, get some nuisance settlements, which we think the settlement amounts here reflect, and then go after the big player and basically push the case with impunity against that big player, trying to extract a settlement. And at the end of the day, if it doesn't work out, it can drop the case and know it has a safe harbor. We think that's inappropriate. It sends the wrong incentives. It doesn't deter bad conduct. It leaves parties like Adobe in a situation where they're out a significant amount of fees. And we think it's important that this court exercise that appellate function that was still recognized in Highmark and vacate and remand here. Thank you. The case is submitted.